UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:21-cr-00816 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 19] |
| v. | : | |
| | : | |
| ARCHIE LYONS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this case involving the controlled delivery of a known drug parcel, Defendant Archie Lyons challenges his warrantless arrest and his interview and his later presentment to a federal magistrate judge.  Finding that these claims fail, the Court **DENIES** Defendant's motion to suppress.[1]

I.    Background

A.    *Officer Twombly detects a suspicious package.*

On October 21, 2021, Cleveland-based United States Postal Inspection Services Task Force Officer Michael Twombly identified a package as a suspected drug parcel because of "its origin, method of mailing, and size."[2]  In particular, Twombly noted that the package was shipped from a source city and the addressee was the name of a business, even though the delivery address was a postal box located at a Garfield Heights, Ohio UPS store.[3]

---

[1] On January 13, 2022, the Court held a Zoom hearing on the motion to suppress.
[2] Doc. 22-3 at 5.
[3] Tr. of Hr'g on Mot. to Suppress at 7 [hereinafter "Tr."].

Case No. 1:21-cr-00816
GWIN, J.

Twombly presented the package to a narcotic detection canine named Ciga.  Ciga gave a positive alert.[4]  Twombly then sought and obtained a search warrant to open the package.[5]

Twombly executed the search warrant.[6]  He opened the suspect package.  Within the package, Twombly found 4,700 grams of methamphetamine packaged inside nine green beans cans.[7]

### B.  Law enforcement executes a controlled delivery operation.

Twombly removed all but a representative 135-gram sample of the narcotics from the package.  He also placed inside a GPS location-tracking device and a device that was able to detect when the package was opened.[8]  After that, he resealed the package.[9]

On October 25, between eight and ten federal and state law enforcement officers executed the controlled delivery operation.[10]  At 10:06 a.m., the officers set up surveillance outside the UPS store.  Ten minutes later, Postal Inspector Bryon Green took the package inside the UPS store and scanned it as "ready for pickup."[11]

Around 12:35 p.m., Defendant Lyons entered the UPS store and retrieved the package.[12]  After Lyons exited the store, the officers arrested him in the parking lot.[13]  Some agents drew their weapons while making the arrest.[14]

---

[4] Doc. 22-3 at 3.
[5] *Id.*
[6] *Id.*
[7] Tr. at 12.
[8] Doc. 22-3 at 4.
[9] *Id.*
[10] Tr. at 33.
[11] Doc. 22-3 at 4.
[12] *Id.*
[13] *Id.*  Although the officers gave somewhat differing testimony, it appears that the initial plan was to use the GPS tracking device to follow the package to its next destination after Lyons received it.  But because the GPS was not functioning properly, the officers determined that they would not be able to track the package's location and decided to arrest Lyons in the parking lot.  Tr. at 17.
[14] Tr. at 45–46.

Case No. 1:21-cr-00816
GWIN, J.

As the officers took Lyons into custody, he made a comment "to the effect that someone must have alerted law enforcement to his activity."[15]  The officer who heard the statement testified that Lyon volunteered the statement and that Lyons's comment did not respond to a question.[16]

### C.  Law enforcement interviews Lyons at the Garfield Heights Post Office.

Around 1:00 p.m., law enforcement transported Lyons to a room at the Post Office.[17]  The officers removed his handcuffs from behind his back and put them in front of him.[18]

Before any questioning, Inspector Green read Defendant Lyons his *Miranda* rights from a card in his wallet.[19]  Lyons indicated that he understood his rights.[20]  In explaining his rights, Green repeatedly told Lyons that he was not required to cooperate, and that Green was not the decision-maker with respect to Lyons's case.[21]  Lyons told Green that he understood his rights and that he was willing to answer questions.[22]

Defendant Lyons then told Green that he believed the package Lyons retrieved contained ecstasy.[23]  He said he had received other packages and that he was paid $2,000 to $3,000 for each package he retrieved.[24]  He also gave Green permission and the passcode to search Lyons's two cell phones.[25]

---

[15] *Id.* at 44.
[16] *Id.*
[17] *Id.* at 21.
[18] *Id.* at 19.
[19] *Id.* at 54.
[20] *Id.*
[21] *Id.* at 55.
[22] *Id.* at 54.
[23] *Id.*
[24] *Id.*
[25] *Id.*

Case No. 1:21-cr-00816
GWIN, J.

When the officers asked Lyons about where he would have taken the package,

Lyons indicated that he wanted to stop questioning and asked to speak with an attorney.[26]

The officers then ended the interview.[27]

### D. Lyons has his initial hearing before Magistrate Judge William H. Baughman.

After the Post Office interview, the officers transported Lyons to the Cuyahoga

County Sheriff's Department, where the officers booked Lyons on a federal hold.[28]

The next morning, on October 26, Magistrate Judge William H. Baughman issued

Lyons's criminal complaint.[29]  The initial appearance was held On October 27, 2021, at

11:30 a.m.[30]  Lyons was not further questioned after the initial questioning that Lyons had

terminated.

Then about a week later, the Grand Jury issued an indictment, charging Lyons with

Possession with Intent to Distribute a Controlled substance, in violation of 21 U.S.C. §

841(a)(1) and 21 U.S.C. § (b)(1)(A).[31]  On November 19, 2021, Lyon was arraigned.[32]

## II.    Discussion

The Defendant's brief is hard to comprehend.[33]   After oral argument, the Court

understands Defendant's primary argument to be that the warrantless arrest was unlawful—

and therefore, all subsequent statements should be suppressed.  Additionally, the Court

understands Defendant's suppression motion to argue that Lyons's interview statements

should be suppressed because of the timing of his interview and subsequent presentment

---

[26] *Id.* at 22.
[27] *Id.* at 56.
[28] Doc. 22 at 4.
[29] *Id.*
[30] *Id.*
[31] *Id.* at 5.
[32] *Id.*
[33] Doc. 19.

Case No. 1:21-cr-00816
GWIN, J.

to the magistrate judge, although Defense counsel did not once raise this claim at oral

argument.

The Court addresses both arguments below.

### A. Lyons's arrest was lawful.

It is well established that "a warrantless arrest by a[n] officer is reasonable under the

Fourth Amendment where the arrest is in public and there is probable cause to believe that

a criminal offense has been or is being committed."[34]  In determining whether probable

cause exists, courts "examine the events leading up to the arrest, and then decide whether

these historical facts, viewed from the standpoint of an objectively reasonable ... officer,

amount to probable cause."[35]

In two controlled delivery cases, the Sixth Circuit has found lawful the warrantless

arrest of a drug parcel recipient.  In *United States v. Smith*,[36] the court determined probable

cause existed where the defendant accepted delivery of a known heroin package, checked

for surveillance, and then drove away from police.[37]  And that court relied on an earlier

decision involving "nearly identical circumstances," in which police delivered a known

drug parcel and then observed subsequent suspicious behavior.[38]

Additionally, a recent Eighth Circuit court found that probable cause existed that

where a person picked up a suspected drug parcel and "demonstrate[ed] his familiarity

with that specific box" by taking it inside his apartment.[39]

---

[34] *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006) (citing *United States v. Watson*, 423 U.S. 411, 417–24 (1976)).

[35] *Id.* (internal citations omitted).

[36] 456 F. App'x 572 (6th Cir. 2012).

[37] *Id.* at 575.

[38] *Id.* (citing *United States v. Bartholomew*, 310 F.3d 912 (6th Cir.2002)).

[39] *United States v. Green*, 9 F.4th 682, 691 (8th Cir. 2021).

Case No. 1:21-cr-00816
GWIN, J.

These decisions support finding probable cause to arrest Lyons. Here, the quantity of drugs in the initial parcel, the attempt to evade detection by hiding the drugs inside food products, and the method of shipping from a source city to a business address at a UPS location all gave law enforcement sufficient grounds to believe that the person who would accept the package delivery would be involved in a drug trafficking operation. Further, Lyons retrieved the package shortly after it was scanned as ready for pick up, suggesting that Lyons had tracked the package and was aware that the package contained potentially valuable and illegal contents.

In addition, concurrent with the arrest, Lyons said "someone alerted law enforcement to his activity regarding picking up" the package, providing more evidence that Lyons was awareness of its illicit contents.[40]

At oral argument, Defense counsel insisted that Lyons's arrest was illegal because the government failed to obtain an anticipatory warrant. This argument is far off the mark. First, because law enforcement had probable cause to arrest Lyons in a public place, a judge-approved warrant was not necessary. Second, anticipatory *search warrants* may be used to search a residence (or physical place) upon the occurrence of a certain condition.[41] Had Lyons transported the package into his home, then such a search warrant could have been necessary. But nothing of that sort occurred here.

Lastly, Defense counsel suggested that the arrest was unlawful because exigent circumstances did not exist. But the government did not need exigent circumstances nor is it required to do so in order to make an arrest in public when there is probable cause.

---

[40] Doc. 22-8.

[41] *See, e.g., United States v. Perkins*, 887 F.3d 272, 274 (6th Cir. 2018) (explaining anticipatory search warrants).

Case No. 1:21-cr-00816
GWIN, J.

### B. Lyons's presentment delay argument is meritless.

Under the U.S. Supreme Court's *Corley v. United States*[42] decision:

[A] district court with a suppression claim must find whether the defendant confessed within six hours of arrest [ . . . ]. If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and ... the weight to be given [it] is left to the jury."[43]

Here, Lyons's interview occurred about an hour after his arrest, and certainly well within the above-described six-hour safe harbor period.

Additionally, all the testimony indicated that the interview was both voluntary and *Miranda*-compliant. Inspector Green read Lyons his *Miranda* rights and repeatedly told Lyons that he did not have to answer the questions. Lyons orally waived his *Miranda* rights and agreed to answer questions.[44] The interview ended when Lyons asked to speak with an attorney.

Further, Lyons had his initial appearance before Judge Baughman about 48 hours after his arrest.[45] There was no testimony suggesting any intentional government delay of any sort.

Taken together, this timeline demonstrates that the Government did not violate its obligations under *Corley*, the relevant federal presentment statutes or criminal procedure rules.

---

[42] 556 U.S. 303 (2009).

[43] *Id.* at 322. The Court continued by saying that in certain circumstances in which a confession comes six hours *after* an arrest, suppression may be the appropriate remedy. *Id.*

[44] *See, e.g., United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002) ("Although [Defendant] suggests that his waiver was not knowingly, voluntarily and intelligently made because he did not sign a waiver form listing his rights, he offers no authority, and none can be found, for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of *Miranda* rights.").

[45] *See United States v. Casillas*, 792 F.3d 929, 931 (8th Cir. 2015) (finding no criminal procedure rule violation when confession is made within six hours of arrest and is otherwise voluntary, even if the later presentment is unreasonably delayed).

Case No. 1:21-cr-00816
GWIN, J.

### III.    Conclusion

The Court **DENIES** Defendant Lyons's motion to suppress.

IT IS SO ORDERED.

Dated: January 18, 2022                              *s/      James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE